**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

**TAREEA FORD**                                                                                             **PLAINTIFF**

**V.                          CASE NO. 1:14CV00031-BD**

**CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration                                                                   DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Tareea Ford appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claims for Disability Insurance benefits ("DIB") under Title II of the Social Security Act (the "Act") and for Supplemental Security Income ("SSI") benefits under Title XVI of the Act. For reasons set out below, the decision of the Commissioner is AFFIRMED.

**I.       Background**

On April 5, 2011, Ms. Ford protectively filed for DIB and SSI benefits due to bipolar disorder, schizophrenia, depression, and anxiety. (Tr. 143) Ms. Ford's claims were denied initially and upon reconsideration. At Ms. Ford's request, an Administrative Law Judge ("ALJ") held a hearing on September 6, 2012, where Ms. Ford appeared with her lawyer. At the hearing, the ALJ heard testimony from Ms. Ford and a vocational expert ("VE"). (Tr. 27-50)

The ALJ issued a decision on October 11, 2012, finding that Ms. Ford was not disabled under the Act. (Tr. 11-22) The Appeals Council denied Ms. Ford's request for review, making the ALJ's decision the Commissioner's final decision. (Tr. 1-3)

Ms. Ford, who was 21 years old at the time of the second hearing, had a ninth-grade education and past relevant work experience as a poultry worker.  (Tr. 32, 41)

## II.    Decision of the Administrative Law Judge[1]

The ALJ found that Ms. Ford had not engaged in substantial gainful activity since April 15, 2010, and that she had the following severe impairments: depression and anxiety.  (Tr. 14)  The ALJ also found that Ms. Ford did not have an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[2]  (*Id.*)

According to the ALJ, Ms. Ford had the residual functional capacity ("RFC") to do a full range of work at all exertional levels, with some limits to accommodate her impairments.  She would be able to respond appropriately to coworkers and supervisors and minor changes in the usual work routine; but she could have only occasional contact with coworkers and supervisors, could not deal with the general public, and could have no exposure to dangerous equipment, or unprotected heights, and could not operate motor vehicles.  (Tr. 16)  After considering the VE's testimony, the ALJ determined that Ms.

---

[1] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy.  20 C.F.R. § 416.920(a)-(g) and 20 C.F.R. § 404.1520(a)-(g).

[2] 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926.

Ford could perform her past relevant work as a poultry packager, and therefore determined that Ms. Ford was not disabled.

### III. Analysis

#### A. Standard of Review

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision." *Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but, the decision cannot be reversed, "simply because some evidence may support the opposite conclusion." *Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

#### B. Ms. Ford's Arguments for Reversal

Ms. Ford asserts that the Commissioner's decision should be reversed because it is not supported by substantial evidence. Specifically, she contends that the ALJ erred: (1) in finding she did not meet listing 12.04; and (2) in the RFC finding. (Doc. No. 12)

1.     **Listing 12.04**

Ms. Ford argues that she satisfied listing 12.04, and that the ALJ erred by finding otherwise. In addition to part A of listing 12.04, Ms. Ford had to meet at least two of the criteria in part B of listing 12.04:

    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration.[3]

Ms. Ford argues that her "aggressive and assaultive behavior," as well as isolation, amounted to marked difficulties in social functioning. She also argues that her "difficulty in concentrating and her hallucinations" caused marked difficulties with concentration, persistence, and pace. Ms. Ford does not argue (nor is there evidence to support) that she met the listing in sub-parts 1 and 4, so she must meet both sub-parts 2 and 3 to meet listing 12.04.

The ALJ found that Ms. Ford had only moderate difficulties in her social functioning. The evidence supports a finding that when Ms. Ford was on her medications she got along well with co-workers, friends, and family. In fact, on the function report she filled out, she indicated that she visited, talked, and laughed with relatives and had no problems getting along with family, friends, or neighbors. (Tr. 166-167) The few references in the record to disagreements with her boyfriend and parents do not rise to the level of "marked difficulties" and appear to be situational.

---

[3] 20 C.F.R. Pt. 404, Subpart P, App. 1.

Ms. Ford argues that her difficulty concentrating and her hallucinations affect her concentration, persistence, and pace.  Based on the records, her problems in these areas occurred during the time she was pregnant (2009 and 2010), and not taking her medications.  Ms Ford gave birth to her son in May 2010, and later that month was hospitalized for several days because of manic episodes.  (Tr. 250-252)  Following hospitalization, Ms. Ford worked with her doctors to get her medications properly adjusted.  In August and September 2010, she was "doing fine" on her medications, her "attention and concentration were intact," and there were no "auditory, visual, and tactile hallucinations."  (Tr. 429-430)

In November 2010, Ms. Ford reported that she could tell she was better when she took her medications.  She repeatedly denied any "auditory, visual, and tactile hallucinations" from this time through August of 2011.  (Tr. 366, 380, 384, 387, 392, 421, 423)

During a physical examination in February 2011, Ms. Ford again reported that she was doing well on her medications and repeatedly reported "doing good" throughout 2011.  (Tr. 365, 383, 386, 395, 407)  December 2011 notes reveal that Ms. Ford had experienced only one episode of "high energy, aggression, and hallucinations" over the past three years.  (Tr. 377)  After the December 2011 appointment, as the record shows, Ms. Ford did not seek treatment again until August of 2012.  At that time she reported having issues with her boyfriend and claimed that she was having hallucinations.  She

testified at the hearing, however, that she had not taken her medications since December of 2011. (Tr. 38)

Based on the record, Ms. Ford's concentration and hallucinations were adequately controlled by medications, which supports the finding that the impairments were not disabling.[4] The ALJ also relied on the findings of two medical consultants. (Tr. 18) All told, substantial evidence supports the ALJ's finding that Ms. Ford did not meet either sub-part 2 or sub-part 3 of listing 12.04(B).

###   2.   RFC

Ms. Ford also argues that the ALJ underestimated the effects of her mental impairments in the RFC determination. She points out that an examining physician, whose report the ALJ relied on, found that Ms. Ford could handle work-like pressures and tasks if her mood was stabilized. Importantly, Ms. Ford's mood <u>was</u> stabilized when she took her medications and followed her treatment plans.[5] The ALJ specifically recognized that Ms. Ford's "prescribed medications have been relatively effective in controlling her symptoms." (Tr. 18) He also included in his RFC all of the non-exertional impairments that were supported by the record. Also important is the fact that Ms. Ford believed that she was able to work. For example, in June 2011, she reported

---

[4] *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) ("An impairment which can be controlled by treatment or medication is not considered disabling."); See *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (holding depression was not severe when it improved with medication).

[5] *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir.2005) ("A failure to follow a recommended course of treatment . . . weighs against a claimant's credibility.").

that she hoped to "return to work soon"; and in August 2011, she reported that she was trying to get a job. (Tr. 382, 388) Contrary to Ms. Ford's assertions, the ALJ's RFC finding is supported by substantial evidence in the record as a whole.

## IV.    Conclusion

The Court has reviewed the entire record, including the ALJ's decision, the transcript of the hearing, and the medical and other evidence. In addition, the Court has read and considered the parties' briefs. There is substantial evidence in the record as a whole to support the Commissioner's decision. Accordingly, Ms. Ford's appeal is DENIED, and the Clerk of Court is directed to close the case.

IT IS SO ORDERED, this 30th day of September, 2014.

_____
UNITED STATES MAGISTRATE JUDGE